[No. 20457-2-I. Division One. August 15, 1988.]

LYNN A. OLSON, *Appellant*, v. ROBERT SIVERLING, *Defendant*, HANSA TOPIWALA, *Respondent*.

Ann Pearl Owen, for appellant.

Tyna L. Ek and Merrick, Hofstedt & Lindsey, for respondent.

PEKELIS, J.—Lynn A. Olson appeals from a summary judgment dismissing her claims against Dr. Hansa Topiwala for medical negligence and failure to obtain informed consent. She contends that the trial court erred in determining that her claims were barred by the statute of limitation.

I

In 1967, Lynn Olson was referred to Dr. Robert Siverling, a physician, for treatment of her headaches. She continued to seek treatment from Dr. Siverling for her headaches and other medical problems until February 1981. Dr. Siverling prescribed medication for Olson's headaches, but, according to Olson, he never suggested the need for any tests to determine their cause.

In July 1974, Olson sought treatment from Dr. Hansa Topiwala, a gynecologist, for a fertility problem. Olson saw Dr. Topiwala periodically from July 25, 1974, to March 24, 1975. After that, she saw Dr. Topiwala only once, on June 6, 1979. According to Olson, Dr. Topiwala never suggested

any connection between her headaches and her fertility problem, and she never suggested that Olson consult a neurologist or an endocrinologist.

On February 23, 1981, Olson's headaches became so severe that she went to a hospital emergency room for treatment. Tests were ordered, and it was soon determined that Olson had a pituitary tumor. The tumor was surgically removed in March 1981. After her surgery, Olson underwent chemotherapy and radiation therapy.

On February 16, 1984, Olson brought suit against Drs. Siverling and Topiwala for medical negligence and failure to obtain informed consent. On July 5, 1985, Dr. Topiwala moved for summary judgment based on the statute of limitation. At Olson's request, the motion was continued to allow further discovery. The motion was renewed on February 13, 1986, again continued, and denied without prejudice on May 1, 1986. In its order, the court stated that Topiwala could renew her motion upon the discovery of additional relevant information.

Dr. Topiwala renewed her motion for summary judgment on April 9, 1987. One of the exhibits attached thereto shows that by January 1982, Olson had retained an attorney, Robert S. Bryan, to investigate a possible lawsuit. Another exhibit, which had not previously been before the court, shows that on February 17, 1982, Bryan forwarded Olson's medical records to Dr. Raymond Valpey, a physician who had treated Olson from about the time her tumor was discovered. Bryan asked Dr. Valpey for a preliminary opinion as to whether a lawsuit was warranted.

On April 23, 1987, the court granted Dr. Topiwala's motion based on the statute of limitation and dismissed her as a defendant. After Olson's motion for reconsideration was denied, she brought this timely appeal.

## II

On an appeal from an order of summary judgment, the reviewing court engages in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d

1030 (1982). A motion for summary judgment based on the statute of limitation should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue of material fact as to when the statutory period commenced. CR 56(c); *Nevils v. Aberle,* 46 Wn. App. 344, 346, 730 P.2d 729 (1986), *review denied,* 108 Wn.2d 1008 (1987). The court must consider all facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson,* 98 Wn.2d at 437.

As a preliminary matter, Olson raises a number of procedural objections to the motion for summary judgment. She argues, in particular, that the motion was renewed in violation of King County Local Rule 7(b)(1) and that certain exhibits attached to the motion were inadmissible. However, we find it unnecessary to reach these issues because we conclude that the materials offered in support of the motion, including the challenged exhibits, are insufficient to establish that there is no genuine issue of material fact as to when the statutory period commenced.

### III

Actions for medical negligence are subject to the statute of limitation found at RCW 4.16.350, which provides:

> Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976 against:
> . . . a physician . . .
> . . .
> based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later . . .

Actions based on care provided on or before June 25, 1976 are governed by an earlier version of RCW 4.16.350, which provides:

> Any civil action for damages against a . . . physician . . . based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last.

Laws of 1971, ch. 80, § 1.[1]

## A

We first consider whether Olson filed her suit within 3 years of the act or omission alleged to have caused her injury. *See* RCW 4.16.350. It is undisputed that Olson's last visit to Dr. Topiwala was on June 6, 1979. Dr. Topiwala contends that the statute of limitation began to run on that date, more than 3 years before the suit was filed on February 16, 1984. Olson, on the other hand, states that she considered Dr. Topiwala to be her physician until February 25, 1981, the date on which Drs. Hulse and Valpey took over her medical care. Relying on *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969), she argues that the statute began to run on that date, less than 3 years before her suit was filed.

In *Samuelson,* the defendant physician performed surgery on the plaintiff on September 18, 1960, and continued

---

[1]The cases are divided over whether, under the 1971 statute, the 1-year period begins to run only upon actual discovery, or whether, as in the case of the current statute, it begins to run when the discovery "reasonably should have" been made. *Compare Bixler v. Bowman,* 94 Wn.2d 146, 149, 614 P.2d 1290 (1980) (actual discovery); *Weisert v. University Hosp.,* 44 Wn. App. 167, 172, 721 P.2d 553 (actual discovery), *review denied,* 107 Wn.2d 1001 (1986); *Wood v. Gibbons,* 38 Wn. App. 343, 347, 685 P.2d 619 (actual discovery), *review denied,* 103 Wn.2d 1009 (1984); *and Teeter v. Lawson,* 25 Wn. App. 560, 562–63, 610 P.2d 925 (1980) (reasonable diligence not required) *with Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 511, 598 P.2d 1358 (1979) (discovered or reasonably should have discovered); *Steele v. Organon, Inc.,* 43 Wn. App. 230, 233, 716 P.2d 920 (discovered or reasonably should have discovered), *review denied,* 106 Wn.2d 1008 (1986); *and Duffy v. King Chiropractic Clinic,* 17 Wn. App. 693, 700–01, 565 P.2d 435 (1977) (discovered or should have discovered), *review denied,* 89 Wn.2d 1021 (1978).

to treat her until April 1963. The plaintiff filed suit on April 1, 1964, charging the defendant with continuing negligence from the time of the surgery. Under the then existing interpretation of the 3–year statute of limitation, the trial court limited damages to those resulting from acts and omissions occurring within 3 years of the commencement of the action. *Samuelson,* 75 Wn.2d at 895, 900. In reversing the trial court, the Supreme Court departed from its earlier interpretation of the statute of limitation and announced the "continuing course of treatment" rule:

> In construing the statute of limitations concerning medical malpractice, we think it a sound rule that, if malpractice is claimed during a continuous and substantially uninterrupted course of treatment for a particular illness or condition, the statute does not begin to run until the treatment for that particular illness or condition has been terminated.

*Samuelson,* 75 Wn.2d at 900. Under the new rule, the defendant could be liable for damages resulting from the surgery itself, which occurred more than 3 years before the suit was filed.

However, *Samuelson* is of little help to us in this case because it does not address the issue of when a course of treatment has been "terminated."[2] More to the point is *Bixler v. Bowman,* 94 Wn.2d 146, 614 P.2d 1290 (1980), in which the court considered whether, under the 1971 statute, the 3–year period began to run upon the plaintiff's last visit to the defendant physician or upon her first visit to a different physician. The plaintiff last consulted the defendant regarding a breast lump on April 29, 1975. On August 4, 1975, she went to another physician who promptly discovered a malignant tumor. The plaintiff filed suit on June 8, 1978. *Bixler,* 94 Wn.2d at 147–48. Relying on *Samuelson,* the plaintiff argued that the 3–year period began to run on

---

[2]Moreover, it is doubtful whether *Samuelson* is still good law. In *Bixler v. Bowman,* 94 Wn.2d 146, 150, 614 P.2d 1290 (1980), the court found that the 1971 version of RCW 4.16.350 had "substantially modified" the continuing course of treatment rule formulated in *Samuelson.*

August 4, 1975, less than 3 years before the suit was filed. The defendant argued that the statute began to run on April 29, 1975, more than 3 years before the suit was filed. *Bixler,* 94 Wn.2d at 148. Relying on the language of the 1971 statute, the court agreed with the defendant:

> The 1971 statute restricts the commencement of the action to within "three years from the date of the *alleged wrongful act".* (Italics ours.) The concept of the termination of a "continuing course of treatment" has been succeeded by the designation of a "date of the alleged wrongful act".

*Bixler,* 94 Wn.2d at 150.

Thus, following *Bixler,*[3] the 3–year statutory period began to run in this case on June 6, 1979, the date of Olson's last consultation with Dr. Topiwala. Since the action was filed more than 3 years later, it is barred by the statute of limitation unless Olson can invoke the 1–year discovery rule. *See* RCW 4.16.350.

### B

■ Under the 1–year discovery rule, a plaintiff's claim does not accrue until she discovers or reasonably should have discovered all the essential elements of a possible cause of action: duty, breach, causation, and damages. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 511, 598 P.2d 1358 (1979); *see also Wood v. Gibbons,* 38 Wn. App. 343, 348–49, 685 P.2d 619, *review denied,* 103 Wn.2d 1009 (1984). In *Ohler,* the plaintiff had known for some years that her blindness resulted from having received "too much oxygen" as a premature infant. *Ohler,* 92 Wn.2d at 509. Thus, she knew of her injury, and she knew of the alleged act that caused it. *Ohler,* 92 Wn.2d at 510. Nonetheless, the court held that there was a triable issue of fact as to when she knew or should have known that the hospital might

---

[3]The language of the current statute is substantially the same in material respects as that of the 1971 statute. Therefore, the holding of *Bixler* is equally applicable to the current statute.

have breached its duty in administering oxygen to her.[4] *Ohler,* 92 Wn.2d at 510; *see also Weisert v. University Hosp.,* 44 Wn. App. 167, 721 P.2d 553, *review denied,* 107 Wn.2d 1001 (1986).

In *Wood,* the plaintiff underwent surgery in 1969, and complications ensued. A few months later, he was told by a physician, Dr. Cleveland, that another physician believed he might have suffered an adverse reaction to starch powder on the surgeon's gloves. Dr. Cleveland himself did not believe this diagnosis was correct. The plaintiff contacted an attorney, who apparently advised him there was nothing to pursue. Then, in 1980, the plaintiff was referred to another physician who confirmed the earlier diagnosis. Within a year, the plaintiff filed suit. *Wood,* 38 Wn. App. at 344–45. The court held that the action was barred by the statute of limitation because "the defendant's duty, possible breach of that duty, possible causation and damages were all known to Mr. Wood in 1969." *Wood,* 38 Wn. App. at 349; *see also Nevils v. Aberle,* 46 Wn. App. 344, 730 P.2d 729 (1986), *review denied,* 108 Wn.2d 1008 (1987).

*Wood* makes it clear that in order to set the 1–year period running, the plaintiff need not be *certain* that all the elements of a cause of action can be established. The plaintiff need only discover some information about each of the four elements of a "*possible* cause of action". (Italics ours.) *Ohler,* 92 Wn.2d at 511, *see also Wood,* 38 Wn. App. at 349. If the plaintiff has such information, then the statute will run even if she is advised by a physician or an attorney that she has no cause of action. *See Nevils,* 46 Wn. App. at 346, 350–51; *Wood,* 38 Wn. App. at 345, 348–49. On the other hand, a mere inquiry by the plaintiff or her attorney into a possible cause of action is not enough to establish, as a matter of law, that the plaintiff discovered

---

[4]The plaintiff had always believed that the oxygen had been properly administered. Then, less than a year before her action was filed, she heard of a similar action filed by a friend. She contacted an attorney, and she learned for the first time that her blindness might have been prevented. *Ohler,* 92 Wn.2d at 509.

all the essential elements of that action. *See Weisert,* 44 Wn. App. at 170–71, 173 (although plaintiff's attorney began investigation in January 1980, issue of fact existed as to whether plaintiff discovered essential elements before March 1981).

In order to establish that Olson discovered all the elements of a possible cause of action more than 1 year before her suit was filed, Dr. Topiwala relies on exhibits 4 and 6 to her motion for summary judgment. Assuming arguendo that they are admissible, those exhibits show that by January 27, 1982, Olson had retained an attorney, Robert Bryan, who requested her medical records from Dr. Topiwala. On February 17, 1982, Bryan wrote to Dr. Valpey to seek "preliminary guidance." Specifically, Dr. Valpey was asked to render an opinion as to

(1) The existance [*sic*] or probability of medical negligence with respect to the care she received for her headaches/amenorrhea symptomotology since approximately 1974; (2) Whether the medical negligence, if any, more likely than not resulted in problems which she otherwise would not have had; (3) On a more likely than not or probability basis, an approximation of the extent to which medical negligence, if any, caused or contributed to additional problems or poorer prognosis.

There is no indication of whether Dr. Valpey ever responded or, if he did, what his opinion was. Thus, the record shows nothing more than an *inquiry* into a possible cause of action, which is not sufficient in itself to establish, as a matter of law, that Olson discovered all the essential elements of a possible cause of action. *See Weisert,* 44 Wn. App. at 170–71, 173.

We conclude, therefore, that there is a genuine issue of material fact as to whether Olson discovered or reasonably should have discovered all the elements of a possible cause of action more than 1 year before she filed suit. Consequently, it was error for the trial court to grant summary judgment based on the statute of limitation.

230

## IV

 Dr. Topiwala contends that, regardless of the statute of limitation, Olson's claim for failure to obtain informed consent was properly dismissed because the doctrine of informed consent is inapplicable on the facts of this case.[5] However, Dr. Topiwala never presented this argument to the trial court before the entry of summary judgment. Legal theories not raised in a timely fashion before the trial court will not be considered for the first time on appeal.[6] *Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982); *see also* RAP 2.5(a), 9.12. Consequently, we decline to consider Dr. Topiwala's new theory on appeal.

Reversed.

COLEMAN, A.C.J., and WINSOR, J., concur.

Review denied by Supreme Court January 10, 1989.

---

[5]The parties agree that a claim for failure to obtain informed consent is governed by the same statute of limitations as a claim for medical negligence.

[6]Dr. Topiwala contends that she did argue this theory below, and she cites this court to her Memorandum in Opposition to Plaintiff's Motion To Reconsider, wherein the following sentence appears:

The defendants have never understood how the doctrine of informed consent applies to an action based on the alleged failure to timely diagnose a tumor.

We do not believe that a single, isolated remark such as this, made *after* summary judgment was granted based on an entirely different theory, the statute of limitation, is sufficient to preserve the issue for review.