# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JULIA KAHUBIRE MITCHELL and
STEPHONE MITCHELL,

        Appellants,

        v.

RANDOLPH BOURNE,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 71320-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 26, 2015

LAU, J. — Julia Mitchell appeals the summary judgment dismissal of her medical malpractice claim against Dr. Randolph Bourne. Because Mitchell's claims are time-barred, we affirm.

## FACTS

In October 2008, Mitchell was referred by her primary care provider to Sound Women's Care for bleeding in early pregnancy. Mitchell underwent ultrasound testing on October 6, October 10, October 17, and October 20 to determine the cause of the bleeding. The October 6, October 10, and October 17 ultrasound reports each described the presence of an intrauterine gestational sac but the absence of a yolk sac, fetal pole, or fetal cardiac activity. The October 20 ultrasound report noted the presence

of a yolk sac but fetal cardiac activity remained absent. The report stated, "With an intrauterine pregnancy present, an ectopic pregnancy is most likely not present." All four ultrasound reports noted that Mitchell had a concerning mass on her right ovary.

Dr. Bourne saw Mitchell for the first time on October 20. Dr. Bourne reviewed what he believed to be Mitchell's complete medical records. He noted:

> Several ultrasounds, including one today, have revealed a small cystic structure in the uterus, yolk sac is not visible, no embryonic pole visualized, and they should be by this point. There is a large anterior fibroid, complex cystic mass noted in the right ovary. Large simple cyst in the left adnexa which appears unchanged. Given all of these things, the most likely diagnosis is ectopic pregnancy. It is also possible, however, that she has a blighted ovum, or even molar pregnancy. A normal pregnancy has been ruled out by the fact that she has had multiple ultrasounds and her hCG is no longer rising . . . .

Dr. Bourne recommended Mitchell undergo a dilation and curettage of the uterine tissue and laparoscopic surgery to rule out an ectopic pregnancy. Mitchell signed a consent form authorizing Dr. Bourne to perform these procedures as well as "such surgical or other procedures as are in the exercise of . . . professional judgment necessary and desirable." During surgery, Dr. Bourne did not see evidence of an intrauterine pregnancy. However, the laparoscopy revealed a large cystic teratoma on Mitchell's right ovary. When Dr. Bourne attempted to remove the teratoma, unexpected bleeding required him to also remove Mitchell's right ovary.

In August 2011, Mitchell sent a letter to the Washington State Department of Health Medical Quality Assurance Commission (MQAC) complaining about Dr. Bourne's care.[1] Mitchell alleged that sometime after the surgery, she requested her medical

---

[1] The letter is undated, but Mitchell alleges in her complaint and her response to the summary judgment motion that she initiated the complaint against Dr. Bourne in August 2011.

records from Stevens Hospital but the October 20 ultrasound report was missing.

Mitchell stated that she later obtained the October 20 report from a hospital receptionist

and was surprised to learn that it indicated a uterine pregnancy with a visible yolk sac

and rising hCG levels. Mitchell described why she believed Dr. Bourne had been

negligent:

> First, he did not fully disclose information of my ultrasound report dated October 20, 2008 to me. Looking at his dictation as proof, he does not even seem to have looked at my ultrasound report or even the films because he states he just realized that I had a dermoid cyst when he cut the corpus luteum off my right ovary. The radiologist indicated that I had a right dermoid cyst. Secondly, he stated that there was no yolk sac visible on that same ultrasound when indeed there was one. He terminated a pregnancy making me believe I had just a uterine cyst and an ectopic some where. I would never have accepted to have surgery if he had told me I had a uterine pregnancy. Thirdly, when he sent the uterine tissue to pathology he indicated that it was ectopic tissue when he actually obtained it from my uterus. The pathology report clearly showed "red tan tissue fragments" which indicated it was gestational tissue with some chorionic villi. Lastly, I had not given him consent to terminate a uterine pregnancy or even remove my right ovary. He failed to fully disclose information to me which resulted in him terminating a pregnancy and removing my right ovary. Also if he was planning on cutting my right ovary, he should have ordered some labs to at least check my clotting factors.

In response to the MQAC's investigation, Dr. Bourne stated that he inadvertently

failed to review the October 20 ultrasound report before performing the surgery. He

admitted that he would not have proceeded with the surgery had he known that there

was a yolk sac present. He noted, however, that even if a yolk sac were present, the

lack of an embryo at nearly eight weeks of gestation indicated that the pregnancy was

not sustainable.

On August 27, 2012, the MQAC issued a statement of allegations and summary

of evidence. The statement alleged that Dr. Bourne's failure to review the October 20

report prior to surgery was "below the standard of care" and "may have denied [Mitchell]

the choice of continuing the pregnancy, abnormal or not." Dr. Bourne stipulated to an informal disposition in lieu of disciplinary action. On August 29, 2012, Mitchell filed a written public disclosure request for records related to the MQAC investigation. On November 20, 2012, the Department of Health released its complete file to Mitchell. On September 5, 2013, Mitchell sued Dr. Bourne, alleging claims of action for negligence, lack of informed consent to remove her right ovary, and fraudulent concealment. Dr. Bourne moved for summary judgment, arguing that Mitchell did not file her action within the limitations period for medical malpractice actions. The trial court dismissed Mitchell's claims. Mitchell appeals.

## DECISION

A motion for summary judgment based on a statute of limitations should be granted only when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate there is no genuine issue of material fact as to when the statutory period commenced. CR 56(c); Olson v. Siverling, 52 Wn. App. 221, 224, 758 P.2d 991 (1988). The statute of limitations is an affirmative defense on which the defendant bears the burden of proof. Haslund v. City of Seattle, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976). We review an order of summary judgment de novo. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

RCW 4.16.350 sets forth the statute of limitations for medical malpractice actions. The statute requires that such an action must be commenced "within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient . . . discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires

later . . . ." RCW 4.16.350(3). The statute of limitations is tolled, however, in cases of intentional concealment of the negligence:

> PROVIDED, That the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect, until the date the patient or the patient's representative has actual knowledge of the act of fraud or concealment, or of the presence of the foreign body; the patient or the patient's representative has one year from the date of the actual knowledge in which to commence a civil action for damages.

RCW 4.16.350(3). A party who seeks to invoke the tolling proviso bears the burden of establishing its applicability. Rivas v. Overlake Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008).

Here, the alleged negligence occurred on October 21, 2008, when Dr. Bourne performed surgery on Mitchell. Mitchell does not dispute that the three-year limitations period expired on October 21, 2011, well before the date she filed this action. Mitchell contends, however, that there is a genuine issue of material fact as to whether she filed the action within the one-year "discovery period." She argues that she did not realize that she had a cause of action against Dr. Bourne until November 20, 2012, the date she received a copy of the MQAC's investigation, because she was unaware until that time that she had a visible yolk sac with rising hCG levels.

However, the one-year discovery period begins to run "when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." Allen v. State, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). It is clear that Mitchell was aware that the October 20 ultrasound showed a visible yolk sac and rising hCG levels at the time she made her complaint to the MQAC in August 2011. Thus, the one-year discovery period began to run no later

than August 2011. Because Mitchell did not file her action until September 5, 2013, her complaint was not timely filed and the trial court properly granted summary judgment dismissal.

Mitchell argues that, in the alternative, the limitations period was tolled by intentional concealment on the part of Dr. Bourne. She asserts that Dr. Bourne purposely mischaracterized the tissue obtained from her uterus as "ectopic tissue" so that it would be destroyed by pathologists without further analysis to show whether the pregnancy was viable or not. But tolling based on intentional concealment requires a showing of "conduct or omissions intended to prevent the discovery of negligence or of the cause of action." Gunnier v. Yakima Heart Ctr., Inc., 134 Wn.2d 854, 867, 953 P.2d 1162 (1998). A party opposing summary judgment must rely on more than mere speculation or argumentative assertions. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Mitchell has presented no evidence that Dr. Bourne suspected he was negligent at the time of the surgery or that he took steps to cover it up.[2] Consequently, Mitchell fails to meet her burden to show that Dr. Bourne intentionally concealed his negligence from her. Moreover, even assuming Mitchell had made such a showing, the limitations period is tolled only "until the date the patient . . . has actual knowledge of the act of fraud or concealment," at which point a plaintiff has one year to file suit. RCW 4.16.350(3). The record shows Mitchell was claiming Dr.

---

[2] In her reply brief, Mitchell attaches a copy of a pathology report, claiming it proves Dr. Bourne intentionally mischaracterized the tissue. But Mitchell did not designate this report as part of the record on review and, thus, we do not consider it. See RAP 10.3(a)(8); Tornetta v. Allstate Ins. Co., 94 Wn. App. 803, 808-09, 973 P.2d 8 (1999)

Bourne mislabeled the tissue as early as August 2011 in her complaint to the MQAC. Consequently, the trial court did not err in declining to toll the limitations period.

Affirmed.

WE CONCUR:

Jay, J.

Spearman, C.J.

Becker, J.

2015 JAN 26 AM 9:00 COURT OF APPEALS DIV 1 STATE OF WASHINGTON