IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BROOKLYN J. FISHER, | ) | |
| | ) | No. 37384-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRI-CITIES LABORATORY, LLC, A | ) | |
| Washington Limited Liability Company, | ) | UNPUBLISHED OPINION |
| and PATHOLOGY ASSOICIATES | ) | |
| MEDICAL LABORATORIES, LLC, A | ) | |
| Washington Limited Liability Company, | ) | |
| and John Does 1 - X and ABC ENTITIES | ) | |
| I - X, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Brooklyn Fisher challenges the trial court's dismissal, based on the statute of limitations, of his lawsuit against Tri-Cities Laboratory, LLC (TCL) and Pathology Associates Medical Laboratories, LLC (PAML) for injuries resulting from contamination of a specimen submitted for testing to TCL. Because the undisputed facts establish that Fisher should have reasonably known of a potential cause of action against the defendants more than one year before filing suit, we affirm the superior court.

FACTS

On August 6, 2015, Brooklyn Fisher, a nineteen-year-old college student, underwent a bronchoscope at Kadlec Regional Medical Center, in Richland. TCL

evaluated a specimen from the procedure and then forwarded a sample to PAML for further evaluation. Fisher's specimen returned a positive result for mycobacterium tuberculosis, a bacteria indicative of the communicable disease tuberculosis. On September 4, 2015, the Benton-Franklin Health District, based on the positive result, instructed Fisher to quarantine at home while undergoing a further communicable disease evaluation.

On September 11, 2015, Interpath Laboratory, a laboratory independent of TCL and PAML, took a second specimen from Brooklyn Fisher. The second test showed no presence of the tuberculosis bacteria. On September 14, 2015, the Benton-Franklin Health District notified Fisher that it had lifted his quarantine because the second evaluation determined that he did not pose an infectious risk as of September 10. The health district released Fisher to return to work.

On October 28, 2015, Brooklyn Fisher visited Dr. Kristina Rudd at the University of Washington Medical Center. Fisher sought a second opinion concerning a chronic cough, asthma, and recurrent bronchitis. After an assessment, Dr. Rudd told Fisher that the earlier analysis performed by TCL, on the specimen taken on August 6, likely resulted in a false positive. Rudd's chart note reads:

> In terms of his mycobacteria culture positivity, we discussed that the
> M. godonae [mycobacterium godonae] is a very common non-pathogenic
> contaminant. Given that he is extremely low-risk for TB [tuberculosis],
> does not have radiographic evidence of pulmonary TB, and has had

> multiple negative serum quanitferons, I strongly suspect that his positive
> BAL [specimen taken by a bronchoscope] culture was a *contaminant*.

CP at 35 (emphasis added). Lower in the note, Dr. Rudd declared:

> Follow-up with your infectious disease doctor about the
> mycobacterium—we do not think you have pulmonary tuberculosis.

CP at 35.

On December 2, 2015, Washington State Department of Health Executive Director

Ramiro Cantu filed a complaint with his department, which complaint alleged possible

contamination by TCL of the bronchoscope specimen obtained from Brooklyn Fisher.

On December 10, 2015, Honora Estes, of the Department of Health Office of Laboratory

Quality Assurance, conducted an investigation into the complaint. Estes concluded that

TCL contaminated the specimen taken from Fisher with a specimen taken from another

patient who suffered from tuberculosis. Estes faulted TCL for the contamination and the

false positive result from Fisher's test. Estes wrote:

> Based on my findings during the investigation, I find that practices
> at TCL Grandridge could have led to the contamination of Patient 1's
> [Brooklyn Fisher's] specimen. Also the laboratory failed to take adequate
> corrective action when they were first notified of the possible
> contamination event and their current testing personnel competency
> evaluations were not adequate for the type and complexity of testing
> performed.

CP at 70.

On January 4, 2016, the Department of Health sent a letter to TCL with an

enclosed statement of deficiencies and plan of correction. The department billed TCL

$1,258.42 for the investigation. We assume that Brooklyn Fisher was not contacted during the investigation nor informed in 2016 of the result of the investigation. Fisher filed no declaration in opposition to the defendants' summary judgment motion.

On March 23, 2016, the Benton-Franklin Health District Health Officer Amy Person wrote to Brooklyn Fisher. The letter confirmed that the TCL specimen from August 6, 2015, returned a false positive because of contamination. The letter read, in part:

> Due to inconsistencies in the clinical findings and laboratory findings, additional investigations were conducted. The final determination was that the lab finding was a result of specimen contamination and was not due to active tuberculosis infection or to exposure to tuberculosis.
> Subsequent testing determined that you did not pose an active infectious risk as of 09/11/2015 and additional laboratory documentation formally noting that the initial finding was due to contamination is dated 01/07/2016.
> You did not have tuberculosis and are, therefore, cleared to work from the public health perspective.

CP at 64. We do not know if the letter enclosed written findings from January 7, 2016.

In support of their motion for summary judgment, defendants filed an undated typewritten statement authored, but unsigned, by Brooklyn Fisher. The statement explained why Fisher failed to obtain "satisfactory academic progress in the 2015-2016 school year." CP at 43. Fisher asked for permission to return to the University of Washington to continue his studies. He wrote in part:

> [T]est results came back from a bronchoscopy that stated I had Tuberculosis. The health department informed me of this and forced me to

> stay home from work. Fortunately, *the lab contaminated the sample*, and it was confirmed that I absolutely did not have Tuberculosis. That information was not made available until sometime in winter quarter, which caused a certain amount of stress during fall quarter.

CP at 43 (emphasis added). The letter also mentioned other significant medical difficulties, including sleep apnea and a false diagnosis of asthma. An unidentified physician prescribed steroids for the asthma, and the steroids caused harmful side effects.

On September 9, 2018, Brooklyn Fisher sent a Freedom of Information Act request to TCL. Fisher requested, among other documents, correspondence between all health care providers and investigators at the local and state level involved in the care of Brooklyn Fisher. TCL responded to the request despite neither the federal freedom of information act nor the Washington public records applying to private entities, such as TCL. The response included the investigation report prepared by Honora Estes, of the Office of Laboratory Quality Assurance.

On October 26, 2018, Brooklyn Fisher retained excellent counsel. On January 4, 2019, Fisher filed suit against TCL and PAML. He had not hired an expert witness to assist in the lawsuit by then. RP 15.

PROCEDURE

In his complaint against TCL and PAML, Brooklyn Fisher alleged that TCL and PAML negligently contaminated his bronchoscope specimen and falsely reported him as contracting tuberculosis. Fisher further alleged that the negligence caused him a loss in

5

job and emotional distress until he received notification of the errors.  He does not
identify the date on which he learned of the errors.

TCL and PAML moved for summary judgment dismissal of Brooklyn Fisher's
claims on the basis that the statute of limitations under RCW 4.16.350(3) barred the
lawsuit.  The superior court granted the motion and dismissed the complaint.

LAW AND ANALYSIS

On appeal, Brooklyn Fisher contends an issue of fact exists as to whether the
statute of limitations bars his complaint against TCL and PAML.  The lengthy and
awkward RCW 4.16.350 imposes a statute of limitations on lawsuits for injury resulting
from health care.  Both parties agree that the statute controls.  RCW 4.16.350 declares, in
pertinent part:

> Any civil action for damages for injury occurring as a result of
> health care . . . based upon alleged professional negligence *shall be
> commenced within* three years of the act or omission alleged to have caused
> the injury or condition, or *one year of the time the patient or his or her
> representative discovered or reasonably should have discovered that the
> injury or condition was caused by said act or omission, whichever period
> expires later*.

(Emphasis added.)

RCW 4.16.350 identifies two possible limitation periods for a health care cause of
action: (1) three years from the date of the act of negligence, and (2) one year from the
date the patient should have discovered that the act of negligence caused his or her injury.
The latter limitation period falls under the rubric of the discovery rule.  *Winbun v. Moore*,

6

143 Wn.2d 206, 214, 18 P.3d 576 (2001). The claimant receives the benefit of the latest of the two dates. Brooklyn Fisher concedes that the act of negligence, the contamination of his bronchoscope and the false positive reading in August 2015, occurred three years before his filing of suit in January 2019. We must decide the date by which Fisher should have reasonably discovered that an act of negligence led to his alleged injuries.

TCL and PAML contend the undisputed facts establish that Fisher knew of specimen contamination by a laboratory as of January 2016. In turn, Fisher should have known of their possible negligence by that time. Fisher replies that he knew of the contamination in early 2016, but he did not know which lab contaminated his sample and he did not know how the sample became contaminated. He emphasizes that multiple laboratories examined his sample. Fisher alleges that in late 2015 and 2016, his age and illness interfered in his ability to investigate the contamination of the specimen. He also argues that laboratory contamination does not equate to laboratory negligence, and, thus, he needed to procure an expert witness to review whether one of the laboratories violated the standard of care.

Under the one year discovery rule, a plaintiff's claim does not accrue until she discovers or reasonably should have discovered all the essential elements of a possible cause of action: duty, breach, causation, and damages. *Olson v. Siverling*, 52 Wn. App. 221, 227, 758 P.2d 991 (1988). In order to set the one year period running, the claimant need not be *certain* that all the elements of a cause of action can be established. *Olson v.*

7

*Siverling*, 52 Wn. App. at 228. The plaintiff need only discover some information about each of the four elements of a *possible* cause of action. *Olson v. Siverling*, 52 Wn. App. at 228. The key consideration under the discovery rule is the factual as opposed to the legal basis of the cause of action. *Adcox v. Children's Orthopedic Hospital & Medical Center*, 123 Wn.2d 15, 35, 864 P.2d 921 (1993).

Knowledge the claimant presumably would have discovered, if she had timely made the necessary inquiry, must be imputed to the plaintiff as a matter of law. *Winbun v. Moore*, 143 Wn.2d at 219. Discovery rules require a claimant to use due diligence in discovering the basis for the cause of action. *Adcox v. Children's Orthopedic Hospital & Medical Center*, 123 Wn.2d at 34-35; *Lo v. Honda Motor Co.*, 73 Wn. App. 448, 455, 869 P.2d 1114 (1994). Rejection of the discovery rule may be appropriate when an injured plaintiff does little to pursue his or her potential claims. *Winbun v. Moore*, 143 Wn.2d 206, 219 (2001). Stated differently, we will not invoke the discovery rule when the plaintiff had ready access to information that a wrong occurred. *Gevaart v. Metco Construction Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988); *Reichelt v. Johns–Manville Corp.*, 107 Wn.2d 761, 772, 733 P.2d 530 (1987); *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 113, 802 P.2d 826 (1991).

When arguing that a question of fact exists as to whether he should have reasonably known of fault of one of the defendants within one year of suit, Brooklyn Fisher relies on three Washington decisions: *Winbun v. Moore*, 143 Wn.2d 206 (2001);

8

*Ohler v. Tacoma General Hospital*, 92 Wn.2d 507, 598 P.2d 1358 (1979); and *Lo v. Honda Motor Co.*, 73 Wn. App. 448 (1994). We briefly analyze each case.

In *Lo v. Honda Motor Co.*, Elizabeth Lo retained counsel and brought claims against Honda Motor Company soon after giving premature birth to her son, Brian. Four years later, she amended her complaint to add the hospital where she gave birth and the doctors involved in her son's delivery. The hospital and doctors moved for summary judgment dismissal of the claim contending that she amended the complaint after the statute of limitations expired. In an affidavit to the court, Lo explained that she initially believed a car incident caused her son's condition. Her Honda accelerated uncontrollably and thrashed her body violently inside the car. Lo then experienced vaginal bleeding and contractions, which led to the premature birth. Brian suffered birth asphyxia caused by a compressed umbilical cord, and he was diagnosed as a spastic quadriplegic with cerebral palsy. Lo explained that she inquired repeatedly as to the cause of her son's condition, but no doctor suggested that medical malpractice could be the cause. When the seventh doctor to whom she inquired opined that medical malpractice could have caused Brian's condition, she amended her complaint.

On appeal, the defendant hospital and doctors, in *Lo v. Honda Motor Co.*, argued that Elizabeth Lo knew of the birth asphyxia and compressed umbilical cord. Therefore, according to the health care provider defendants, Lo should have earlier inquired specifically into whether medical malpractice led to the conditions. This court disagreed,

holding that failure to inquire specifically into medical malpractice when another explanation existed for the injuries did not automatically constitute a lack of due diligence. This court determined that whether Lo and her attorneys exercised due diligence was a question of fact to which reasonable minds could differ and should therefore be placed before a jury.

In *Winbun v. Moore*, 143 Wn.2d 206 (2001), our high court applied the rationale from *Lo v. Honda Motor Co*. Gail Winbun brought a lawsuit against the hospital and doctors, whom she alleged negligently treated her. She subsequently amended her complaint to add an additional physician, Stephen Epstein. Epstein moved for summary judgment, arguing that the amendment came after the statute of limitations expired. The Court of Appeals agreed with Epstein. This court interpreted the statute of limitations as accruing as soon as a plaintiff discovered or reasonably should have discovered that any doctor's actions caused his or her injury. This court observed that Winbun requested her medical records and yet failed to identify Epstein as a potentially liable party. This court concluded that an expert would have readily revealed Epstein's possible negligence.

On review, the Washington Supreme Court, in *Winbun v. Moore*, disagreed with the Court of Appeals. The high court observed that medical providers omitted some of Gail Winbun's records when responding to a request and the missing documents could have obscured Winbun's ability to determine the nature and extent of Epstein's care. The court also disagreed that Winbun had simply failed to identify a defendant. Rather, her

lack of knowledge of any *act or omission* by Epstein resulted in her failure to name

Epstein as an original defendant. The court concluded that knowledge of an act by one

health care provider did not necessarily trigger the discovery rule as to all providers.

In *Ohler v. Tacoma General Hospital*, 92 Wn.2d 507 (1979), Lana Ohler knew

that she was blind due to excessive oxygen while in an incubator as an infant. At age 21,

she heard of a lawsuit brought by a school friend who also went blind as an infant after

being incubated. She contacted her friend's attorney and learned that her own blindness

may have been prevented since she might not have needed the amount of oxygen given to

her. She brought a lawsuit against Tacoma General Hospital and the incubator

manufacturer, Air Shields. The parties brought motions for summary judgment. The

Supreme Court held that, although Ohler knew of her blindness and knew that she was

administered "too much oxygen," a factual issue existed as to whether she knew that the

blindness was a result of a breach of the hospital's duty. A genuine issue of material fact

existed as to when Ohler discovered that her blindness may have been caused by Tacoma

General's wrongful acts.

By March 2016, if not October 2015, Brooklyn Fisher knew that contamination by

a laboratory resulted in a false positive and misdiagnosis for tuberculosis. Dr. Kristina

Rudd and the Benton-Franklin Health Department both informed him of these facts. At

some unknown time in 2016, Fisher complained to his university about the contamination

and false diagnosis and its impact on him. Nevertheless, he never made any inquiries or

retained counsel in order to discover which party caused the contamination and whether he might possess a cause of action for malpractice. Unlike in *Lo v. Honda Motor Co.* and *Winburn v. Moore*, multiple explanations for Brooklyn Fisher's harm did not exist. A contaminated sample indisputably caused any injury. He could and should have easily discerned by 2016, if not earlier, which laboratory or laboratories handled his specimen.

Elizabeth Lo, shortly after her automobile incident, asked perceptive questions of her health care providers about what could have caused the injuries to her son. She contacted a lawyer within two years of the injury. Brooklyn Fisher waited years before requesting records or retaining counsel in an effort to discover the cause of the contamination. He asked no one, until seeing an attorney in October 2018, about who was to blame for the false positive diagnosis of tuberculosis. Neither TCL nor PAML actively misled Brooklyn Fisher, as the physicians may have done to Elizabeth Lo. Once Fisher asked for records from TCL, TCL voluntarily produced the records, including the records that showed the Department of Health had concluded that TCL negligently handled Fisher's specimen. Unlike Gail Winbun's providers, TCL never withheld relevant records when asked.

Brooklyn Fisher contends that he needed to locate an expert to investigate and determine whether he possessed a valid claim for negligence. Therefore, according to Fisher, this need delayed the commencement of the statute of limitations period. We agree that a healthcare provider can usually successfully move for summary judgment

12

dismissal if the plaintiff lacks competent expert testimony. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). We need not decide whether contamination of a specimen is that type of error that requires no expert testimony to create a jury question of professional negligence. *Hall v. Sacred Heart Medical Center*, 100 Wn. App. 53, 60, 995 P.2d 621 (2000).

Assuming Brooklyn Fisher needed to procure the assistance of an expert witness, he provides no explanation as to why he did not seek the help of an expert, let alone seek the aid of his able attorney, within one year of knowing of the contaminated specimen in October 2015 and again in March 2016. As of the date of the summary judgment argument before the superior court, Fisher still had not hired an expert. The logical extension of his contention is that the statute of limitations had yet to commence even at the time of oral argument before the trial court because he had yet to procure an expert witness, but Fisher does not forward such an argument.

In Washington decisions forwarded by Brooklyn Fisher, plaintiffs submitted affidavits explaining why they failed to either add a provider or initiate a lawsuit at an earlier time. Fisher supplies us no declaration.

In *Zaleck v. Everett Clinic*, 60 Wn. App. 107 (1991), Steven Zaleck's thumb became numb from a shot of cortisone injected into his wrist. His physician then told him that the needle might have hit a nerve. This court held that, under the undisputed facts, Zaleck knew or should have known of his injury and its cause and failed to exercise

13

due diligence when all that he had to do, in order to discover the physician's negligence, was to talk to a lawyer or another physician.

We note that, during the time of the running of the statute of limitations, Brooklyn Fisher was a young adult. He also emphasizes that he encountered difficulty at school because of an illness and unneeded medications. But Fisher supplies the court no information as to why the difficulties would prevent him from retrieving his medical records or consulting with a physician or attorney in 2015 and 2016, let alone at any time more than one year before filing suit. At all relevant times, Fisher was above the age of majority. No case law excuses one age 19 or above from exercising the same reasonable efforts as other adults for purposes of determining the commencement of the statute of limitations.

We recognize that a court should not grant a motion for summary judgment when a genuine issue of material fact exists. CR 56(c). This court considers the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226 (1989). Nevertheless, summary judgment is proper in an action based on a statute of limitations when there is no genuine issue of material fact as to when the statutory period commenced. *Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 323, 300 P.3d 431 (2013).

Under the undisputed evidence, Brooklyn Fisher failed to exercise reasonable steps to determine if TCL or PAML legally wronged him when he knew by October 2015

or March 2016 of contamination of his specimen. Therefore, we conclude that the one-year discovery rule commenced years before Fisher filed suit in January 2019.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of TCL and PAML.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.P.T.[1]

_____
Lawrence-Berrey, J.

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.