[No. 24848–1–I. Division One. January 7, 1991.]

STEVEN W. ZALECK, *Appellant*, v. THE EVERETT
CLINIC, ET AL, *Respondents*.

*David Welts* and *Welts & Welts,* for appellant.

*Rebekah R. Ross, Daniel Ferm,* and *Williams, Kastner & Gibbs,* for respondents.

WINSOR, J.*—Steven Zaleck appeals a summary judgment order dismissing, on statute of limitations grounds, his medical malpractice claim against Dr. Irving Varley and the Everett Clinic. He contends that summary judgment was improper because there are genuine issues of material fact as to when he discovered, or reasonably should have discovered, his cause of action. We affirm.

Zaleck suffered a work–related wrist injury on November 10, 1981. He was treated at the Everett Clinic by Dr. Varley, who on November 19, 1981, administered an injection of Xylocaine and hydrocortisone into Zaleck's injured wrist. When Dr. Varley inserted the needle, Zaleck felt immediate intense pain in all five fingertips. The pain soon subsided, but Zaleck continued to feel numbness and tingling in his thumb. Zaleck asked Dr. Varley why the injection was so painful; Dr. Varley explained that the needle might have hit a nerve. According to Zaleck, Dr. Varley also said that the burning and numbness resulting from the shot "wouldn't be a problem and would go away."

The numbness and tingling in Zaleck's thumb did not go away. In March 1982, Dr. Varley referred Zaleck to Dr. James Pinkham, an orthopedist practicing at the Everett Clinic. Dr. Pinkham performed carpal tunnel surgery on Zaleck, but Zaleck's symptoms continued. Dr. Pinkham referred Zaleck to a hand specialist, Dr. Edward Almquist, in August 1983. Dr. Almquist operated on Zaleck's wrist several times. The first operation was in October 1983, the last was in May 1984. After these surgeries Zaleck still had a numb thumb, as well as "a 20 percent impairment of the functions of his wrist from the insertion of the biceps down."

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

Zaleck's final office visit to Dr. Almquist was January 30, 1985. The Department of Labor and Industries closed his claim in March 1985. Zaleck consulted a lawyer in April 1985 and filed this action against Dr. Varley and the Everett Clinic on March 21, 1986. Dr. Varley moved for summary judgment of dismissal on statute of limitations grounds. The trial court granted Dr. Varley's motion and this appeal followed.

A motion for summary judgment based on a statute of limitations should be granted only if the record demonstrates that there is no genuine issue of material fact as to when the statutory period commenced. *Olson v. Siverling,* 52 Wn. App. 221, 224, 758 P.2d 991 (1988), *review denied,* 111 Wn.2d 1033 (1989). All facts and reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if, based on all of the evidence, reasonable persons could reach but one conclusion. *Olson,* 52 Wn. App. at 224. A reviewing court conducts the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The statute of limitations applicable to this case is RCW 4.16.350(3), which provides in part:

> Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976[:] . . . based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission[.]

Zaleck contends that his cause of action falls within the 1–year postdiscovery period allowed by this statute. That period commences when the plaintiff "discovered or reasonably should have discovered all of the essential elements of [his or] her possible cause of action, *i.e.,* duty, breach, causation, damages." *Ohler v. Tacoma Gen. Hosp.,* 92

Wn.2d 507, 511, 598 P.2d 1358 (1979).[1] Zaleck argues that in this case, issues of material fact exist as to all but the duty element. We disagree.

Even when the facts are interpreted in the light most favorable to Zaleck, there is no genuine issue as to whether Zaleck discovered, or reasonably should have discovered, the cause of his symptoms more than 1 year before he filed suit. Zaleck developed thumb numbness when Dr. Varley administered the exceptionally painful injection. On that same day, Dr. Varley told Zaleck that he may have hit a nerve. From this a reasonable person could only have concluded that the injection caused at least some of Zaleck's symptoms. Moreover, although Zaleck suffered other problems and symptoms, he could have discovered the cause of his thumb problem in 1983 simply by asking Dr. Almquist. Dr. Almquist's chart entry for Zaleck's office visit on September 26, 1983, states:

> With regard to the problem, *i.e.*, numbness in his thumb, this is probably a residual from an injection into the area and could be explored under local to release any scar tissue or repair a small branch of the superficial radial nerve which may have been injured.

Finally, it appears that Zaleck actually knew the cause of the numbness by at least 1983. A February 10, 1983, report from Vocational Services Northwest that was prepared for the Department of Labor and Industries includes this entry:

> Mr. Zaleck states that he was employed by Everett Pad and Paper on November 10, 1981 as a broke handler. He picked up a 60 or 70 lb. slab of paper . . .. It slipped and all of the weight of the paper fell on his right hand twisting it the wrong way, causing severe pain. . . . *Shortly after the accident, the doctor*

---

[1] Dr. Varley argues in his respondent's brief that the *Ohler* essential elements rule no longer applies to RCW 4.16.350(3). This argument was not raised to the trial court; we therefore do not consider it. RAP 9.12 ("[o]n review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court"); *accord, Johnson v. Reehoorn*, 56 Wn. App. 692, 700, 784 P.2d 1301 (1990).

*gave him a shot of cortisone in his wrist. It affected his thumb causing it to become numb.*

(Italics ours.)

▮ Zaleck's discovery of the element of damage is also not in serious dispute. Zaleck has suffered a numb thumb since the 1981 injection. Although he may not have known at that time that he would ultimately suffer a permanent partial disability, he knew at the time of injection that some damage had occurred. This is sufficient to establish that Zaleck discovered, or should have discovered, his damage more than 1 year before he filed suit. *See generally Steele v. Organon, Inc.,* 43 Wn. App. 230, 235, 716 P.2d 920 (to have discovered element of damages, plaintiff need not know full amount of damage; she need only know that some actual and appreciable damage occurred), *review denied,* 106 Wn.2d 1008 (1986). The fact that Dr. Varley assured Zaleck at the time of injection that his symptoms would go away does not change this result. Dr. Varley's assurance was made in November 1981. Zaleck's thumb remained numb throughout the 4½ years before he filed suit. A reasonable person would have begun to doubt Dr. Varley's assurance that the symptoms would subside long before a year prior to his filing suit.

▮ The remaining essential element at issue is breach. Under *Ohler* and its progeny, the 1–year discovery period is triggered as to this element when the plaintiff knew, or should have known, that the defendant violated the applicable standard of care when he or she caused plaintiff's injury. *Ohler,* 92 Wn.2d at 510; *Olson,* 52 Wn. App. at 229; *Weisert v. University Hosp.,* 44 Wn. App. 167, 172–73, 721 P.2d 553, *review denied,* 107 Wn.2d 1001 (1986). To discover a "breach" in a medical malpractice action, the plaintiff need not have known with certainty that the health care provider was negligent. Instead, the plaintiff need only have had, or should have had, information that the provider was possibly negligent. *See Olson,* 52 Wn. App. at 228–29.

Here, nothing in the record affirmatively indicates that Zaleck ever considered whether Dr. Varley was negligent

until he consulted a lawyer. Accordingly, based on *Ohler, Olson,* and *Weisert,* we arguably could hold that there is a genuine issue of fact as to discovery of the breach element of his cause of action. We decline to do so, however, because such a holding would violate the requirement that the 1–year postdiscovery period can be invoked only when the plaintiff has exercised due diligence; it will not be invoked when the plaintiff has had ready access to information that a wrong has occurred. *Gevaart v. Metco Constr., Inc.,* 111 Wn.2d 499, 502, 760 P.2d 348 (1988); *Reichelt v. Johns–Manville Corp.,* 107 Wn.2d 761, 772, 733 P.2d 530 (1987); *Nord v. Shoreline Sav. Ass'n,* 57 Wn. App. 151, 158, 787 P.2d 66, *review granted,* 115 Wn.2d 1001 (1990).

*Reichelt* is instructive as to the due diligence rule. There, the court considered whether the statute of limitations had run on a negligence claim based on exposure to asbestos. As in the instant case, the plaintiff in *Reichelt* was aware of the damage and causation elements of his cause of action several years before filing a complaint. The court rejected plaintiff's claim that despite this knowledge, he did not know about defendant's breach of duty until less than a year before filing suit.

> Mr. Reichelt would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law. A party must exercise reasonable diligence in pursuing a legal claim. If such diligence is not exercised in a timely manner, the cause of action will be barred by the statute of limitations.

*Reichelt,* 107 Wn.2d at 772.

*Gevaart* is also instructive. In *Gevaart,* plaintiff slipped and fell on a sloping step. More than 3 years later she filed an action alleging negligent design and construction of the stairway. Despite plaintiff's argument that she did not discover that the sloped step was the result of negligence until after the applicable 3–year statute had run, the trial court entered summary judgment of dismissal on statute of limitation grounds. The Supreme Court affirmed the dismissal,

noting that all essential elements of plaintiff's case occurred on the date of her fall. The court explained that the discovery rule does not require knowledge of the existence of a legal cause of action, and reiterated the admonition of *Reichelt* that a statute of limitation cannot be tolled by the discovery rule until an injured person consults a lawyer. 111 Wn.2d at 502. The court then said:

> Gevaart's affidavit establishes that on October 25, 1981, she knew the step sloped. By the exercise of due diligence she could have determined that the step did not conform to the building code and further, the true reason why the slope existed. Because she did not exercise diligence in a timely manner her cause of action . . . was barred by the 3–year statute of limitations.

*Gevaart,* 111 Wn.2d at 502 (quoting *Gevaart v. Metco Constr., Inc.,* noted at 48 Wn. App. 1034 (1987)).

Turning to the facts of this case, we conclude as a matter of law that Zaleck failed to exercise reasonable diligence in discovering that Dr. Varley may have negligently administered the injury causing injection. Zaleck knew facts comprising the causation and damage elements of a possible cause of action in November 1981. Discovery that his thumb symptoms might have resulted from Dr. Varley's negligence could have been accomplished by a simple inquiry to a lawyer or to one of his subsequent physicians. Apparently Zaleck never made such an inquiry. His failure to do so conclusively evidences a lack of due diligence.

The trial court's dismissal of Zaleck's complaint is affirmed.

COLEMAN and PEKELIS, JJ., concur.