LOUISIANA–PACIFIC CORPORATION;
Port of Tacoma, Plaintiffs–
Appellees,

v.

ASARCO INCORPORATED, Defendant–
Third–Party Plaintiff–Appellant.

v.

William FJETLAND; B & L Trucking and
Construction Co., Inc.; Industrial Min-
eral Products, Inc.; Murray Pacific Cor-
poration; Portac, Inc.; Cascade Timber
Company; Executive Bark Inc.; Wasser
& Winters Company; Eagle Trucking,
Inc., Third–Party–Defendants–Appellees.

LOUISIANA–PACIFIC CORPORATION,
Plaintiff,

v.

CASCADE TIMBER COMPANY, Third–
Party Defendant/Counter-
Claimant/Appellant,

v.

ASARCO INCORPORATED,
Defendant/Third–Party
Plaintiff/Appellee,

William Fjetland; B & L Trucking and
Construction Co., Inc.; Industrial Min-
eral Products, Inc.; Murray Pacific Cor-
poration; Portac, Inc., Third–Party De-
fendants.

LOUISIANA–PACIFIC CORPORATION;
Port of Tacoma, Plaintiffs,

Portac, INC., Third–Party
Defendant/Counter-
Claimant/Appellant,

v.

ASARCO INCORPORATED, Defendant–
Third–Party Plaintiff/Appellee,

William Fjetland, et al., Third–
Party Defendants.

LOUISIANA–PACIFIC CORPORATION;
Plaintiff,

v.

MURRAY PACIFIC CORPORATION,
Third–Party Defendant/Counter-
Claimant/Appellant,

v.

ASARCO INCORPORATED,
Defendant/Third–Party
Plaintiff/Appellee,

William Fjetland; B & L Trucking and
Construction Co., Inc.; Industrial Min-
eral Products, Inc., Third–Party Defen-
dants.

LOUISIANA–PACIFIC CORPORATION;
Port of Tacoma, Plaintiffs,

Wasser & Winters Company, Third–Party
Defendant/Counter–Claimant/Appellant,

v.

ASARCO INCORPORATED,
Defendant/Third–Party
Plaintiff/Appellee,

William Fjetland, et al., Third–
Party Defendants.

LOUISIANA–PACIFIC CORPORATION,
Plaintiff,

and

Port of Tacoma, Plaintiff–Appellant,

v.

ASARCO INCORPORATED,
Defendant/Third–Party
Plaintiff/Appellee.

Nos. 92–35061, 92–35144, 92–35145, 92–
35148, 92–35149 and 92–35152.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1994.

Before: WRIGHT, THOMPSON and
KLEINFELD, Circuit Judges.

ORDER

The opinion filed September 23, 1993, and
published at 6 F.3d 1332 (9th Cir.1993), is
amended as follows:

1. At page 1335, the last paragraph on the page which begins "We have jurisdiction under" is amended by deleting the fourth sentence of that paragraph (which sentence begins "Because the remaining WPLA damages") and inserting in its place the sentence: "We remand to the district court the question of when the statute of limitations began to run on the plaintiffs' WPLA claims."

2. At page 1345, subpart B of part III entitled "Remaining Damages Under the WPLA" is deleted and the following subpart B is inserted in its place:

B. Remaining Damages Under the WPLA

Except for the damages awarded to Portac for loss of use of the Portac site, all damages awarded under the WPLA are subsumed within the CERCLA award which we have upheld. Nevertheless, we must determine whether the WPLA damage awards were proper, because the district court awarded the plaintiffs prejudgment interest on these awards at the state law rate, which is greater than the federal rate.

ASARCO challenges the WPLA damage awards on the ground that the WPLA claims are barred by the applicable three-year statute of limitations.

The first lawsuit against ASARCO was filed by Louisiana–Pacific on May 11, 1988. The district court determined that the WPLA causes of action did not accrue until 1986, when the Washington Department of Energy ("WDOE") notified the various plaintiffs that they had to clean up their properties. The district court concluded the WPLA claims were not barred by the statute of limitations.

ASARCO argues the statute of limitations began to run when the plaintiffs first discovered, or should have discovered, their properties were damaged by ASARCO's slag. There was evidence the plaintiffs had meetings with, and calls and letters from, the WDOE concerning the contamination of their properties from slag as early as 1981.

We look to Washington state law to determine when the statute of limitations began to run on the WPLA claims. In *North Coast Air Serv., Ltd. v. Grumman Corp.*, 111 Wash.2d 315, 759 P.2d 405 (1988), the Washington Supreme Court held that in products liability actions, a cause of action accrues when a claimant discovers, "or in the exercise of due diligence should have discovered, a factual causal relationship of the product to the harm." *Id.* at 319, 759 P.2d at 407. Stated differently, the statute of limitations begins to run when a claimant first learns, or should have learned, of the essential elements of the possible cause of action. *Rose v. A.C. & S., Inc.*, 796 F.2d 294, 296 (9th Cir.1986); *Ohler v. Tacoma General Hosp.*, 92 Wash.2d 507, 511, 598 P.2d 1358, 1360 (1979). Where a claimant "has notice of facts sufficient to prompt a person of average prudence to inquire," the claimant "is deemed to have notice of all facts which reasonable inquiry would disclose." *Vigil v. Spokane County*, 42 Wash.App. 796, 800, 714 P.2d 692, 695 (1986). Just when a claimant knows or should know the elements of its cause of action is a question of fact. *North Coast Air*, 111 Wash.2d at 319, 759 P.2d at 407.

The essential elements of a products liability claim under Washington law are duty, breach of duty, causation, and damage or injury. *Rose*, 796 F.2d at 296; *Hibbard v. Gordon, Thomas, Honeywell, Malanca, Peterson and O'Hern*, 118 Wash.2d 737, 747, 826 P.2d 690, 695 (1992); *Ohler*, 92 Wash.2d at 511, 598 P.2d at 1360. Here, the district court held that the statute of limitations began to run when the WDOE ordered the plaintiffs to clean up their properties, not when they first learned their properties were contaminated by ASARCO's slag. The district court reasoned that until the plaintiffs were required to incur response costs, they were unaware of the damages they had suffered under the WPLA and of the injury to their properties. We disagree.

In assessing the damage element, the statute of limitations begins to run when the claimant first discovers, or should have discovered, some damage, not necessarily the full extent of the damage:

"Where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." [citations omitted]

*Steele v. Organon, Inc.,* 43 Wash.App. 230, 234, 716 P.2d 920, 922 (1986). *See also Zaleck v. Everett Clinic,* 60 Wash.App. 107, 802 P.2d 826 (1991).

The full extent of damage or loss need not be known, so long as the claimant is aware of some injury; "it is uncertainty as to the *fact* of damage, rather than its *amount,* which negatives the existence of a cause of action. Moreover, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation." *Steele,* 43 Wash. App. at 235, 716 P.2d at 923; *see also Zaleck,* 60 Wash.App. 107 [802 P.2d 826] (plaintiff suffered damage sufficient to trigger the limitations period when his thumb became numb following an injection, not when he later learned he had suffered a permanent partial disability in his thumb).

Although no Washington case has decided this issue in the context of contaminated property, other courts have concluded that an injury to property occurs when a claimant first learns its property is contaminated. In *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 669 F.Supp. 854 (N.D.Ill., 1987), Hines Lumber filed suit for CERCLA and common law negligence and product liability damages against a variety of defendants. *Id.* at 855. All defendants sold chemicals to Hines Lumber which it used in wood treatment and processing. *Id.* at 855–56. The chemicals allegedly caused environmental damage and Hines sued for its expected future damages. *Id.* Among other things, the defendants contended Hines failed to file suit within the state law statute of limitations. Although no costs of clean up had yet been incurred, Hines had sold the property and suffered a diminution of its value as a result of its contamination. The district court ignored the fact that no response costs had been incurred, and looked exclusively to the time Hines first learned its property had been damaged, to determine when its state causes of action accrued. *See also Montana Pole & Treating Plant v. I.F. Laucks and Co.,* 775 F.Supp. 1339 (D.Mont.1991) (statute of limitations commenced when owners knew waste preservative caused environmental damage, not when EPA seized the property); *CAMSI v. Hunter Technology Corp.,* 230 Cal.App.3d 1525, 282 Cal.Rptr. 80 (1991).

We find the reasoning of these cases persuasive and apply it to the plaintiffs' WPLA claims. Here, the plaintiffs knew their properties were damaged when they first began receiving notices from the WDOE. They obviously knew at that time the values of their properties were likely diminished, regardless of future clean up costs the WDOE might require.

We conclude the plaintiffs' claims under the WPLA accrued when they became aware, or should have become aware, of the contamination of their properties. It is uncertain when this occurred, although ASARCO contends it occurred as early as 1981. This is a factual question which should be addressed on remand. We do not reach the question whether the WPLA damages sought by the plaintiffs are sufficiently liquidated to support an award of prejudgment interest under Washington law.

3. At page 1346, the last full paragraph which begins with the words "We reverse the district court's dismissal" is deleted and the following paragraph is inserted in its place:

We reverse the district court's dismissal of the MTCA claims. We remand to it the question whether the plaintiffs are entitled to prevail on those claims and, if so, what damages, attorney fees, prejudgment interest ·and other recovery they may be entitled to.

4. At page 1347, the first paragraph under the heading "CONCLUSION" is deleted

and the following paragraph is inserted in its place:

We affirm the district court's award of damages and costs under CERCLA. We reverse its award of attorney fees under that statute. We also reverse the finding of liability under the HWMA, and the award under it of cleanup costs, attorney fees, costs, and prejudgment interest. We remand to the district court the question whether the plaintiffs' claims under the WPLA are barred by the statute of limitations, and if not, whether the plaintiffs' claims under the WPLA are sufficiently liquidated to support an award of prejudgment interest under Washington law. We reverse the district court's dismissal of the MTCA claims and remand those claims to the district court for further proceedings consistent with this opinion. We reverse the award of loss-of-use damages under the WPLA. We do not reach the award of damages and costs under the WPLA because they are subsumed within the CERCLA award which we uphold.