IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KEVIN SCOTT CHRISTIAN, | ) | No. 78320-3-I |
| Appellant, | ) | |
| v. | ) | DIVISION ONE |
| PROVIDENCE REGIONAL MEDICAL CENTER EVERETT, | ) | |
| Defendant, | ) | |
| and | ) | |
| WESTERN WASHINGTON MEDICAL GROUP, INC., P.S.; THOMAS FREDERICK STARK, M.D., and his wife, JANE DOE STARK, and the marital community thereof, | ) | UNPUBLISHED OPINION
FILED: July 1, 2019 |
| Respondents. | ) | |

SMITH, J. — Kevin Christian appeals the trial court's summary dismissal of his medical negligence claims against Western Washington Medical Group Inc., Dr. Thomas Stark, and Dr. Stark's wife and marital community (collectively the Stark Parties) for injuries resulting from operations performed in May 2014. Christian filed this lawsuit more than three years after the procedures but argues that his claims are not time barred because they were filed within one year after he discovered the basis for his claims. Because there is undisputed evidence that Christian reported his postoperative symptoms to Dr. Stark as early as summer 2014, Christian has not raised a genuine issue of material fact as to whether his claims are time barred. We affirm.

FACTS

On May 6, 2014, Dr. Stark performed a left hip replacement surgery on Christian. Postoperative x-rays taken the day of the surgery showed a fracture in Christian's left femur. Accordingly, Dr. Stark performed an additional surgery the same day to repair Christian's femur. Christian was discharged on May 9, 2014.

A week later, Christian visited the emergency room complaining of left hip and thigh erythema and swelling. According to a chart note from the emergency room visit, Christian went back to the operating room for treatment, which revealed a postoperative infection. Christian was placed on broad-spectrum antibiotics. By November 2014, he had been dismissed by his infectious disease doctor because his labs were normal.

Meanwhile, Christian had three follow-up visits with Dr. Stark after the May 2014 surgeries. Dr. Stark's chart notes indicate that at the first follow-up in July 2014, Christian reported that his pain level was improving, he was able to drive and to walk short distances without pain, and he was back to work. Dr. Stark noted, however, that Christian "feels like the left leg is a little bit shorter and he does have some weakness."

At Christian's next follow-up in August 2014, Dr. Stark again noted that Christian "feels like his right leg is longer than his left leg" but that "this imbalance has been improving since surgery." Dr. Stark's notes also indicate that "[w]hen standing the left iliac crest appears to be 45 mm shorter than the right iliac crest." Dr. Stark offered Christian a heel lift to wear on his left side, but Christian declined.

2

Christian saw Dr. Stark for a six-month postoperative visit on November 5, 2014. Dr. Stark's notes from that visit indicate that Christian was experiencing "minimal pain" and noticing "better motion each day." Dr. Stark assessed that Christian was "doing well" and should return for follow-up visits as needed. It does not appear from the record that Christian saw Dr. Stark again after this November 2014 follow-up.

Almost two years later, on August 22, 2016, Christian was examined by Dr. Kipley Siggard. In his chart notes, Dr. Siggard described Christian's relevant health history as follows:

> This patient is a 60-year-old male with an unfortunate complicated history involving his left hip. The patient had a left total hip arthroplasty in May of 2014 which was complicated by a femur fracture and required secondary surgery for fixation and a repeat surgery later on 05/17/2014 for a MRSA infection. Fortunately the patient resolved his infection and healed his femur fracture around his total hip arthroplasty.
>
> Unfortunately the patient has had some right lower extremity symptoms that have been present since that time. These include pain in his right superior buttock and pains in his right Achilles tendon area. He has not had injury or trauma to these areas and has not had known arthritis of any joints on the right side. The patient claims rightfully that his right side had to "bear the weight" during his recovery. The patient is noted to have about 2 cm of shortening of the left lower extremity compared to the right as viewing his iliac crest standing. He has not over time made any correction of shoes or worn inserts. Walking seems to make both pains worse and both pains resolve with sitting or resting fairly rapidly. Patient denies any back pain.

On August 15, 2017, just less than a year after seeing Dr. Siggard, Christian sued the Stark Parties, alleging that Dr. Stark failed to exercise

3

reasonable care in conducting the two surgeries in May 2014.[1] He alleged that Dr. Stark's negligence caused: (1) Christian's postsurgery infection; (2) the two-centimeter discrepancy reported by Dr. Siggard in August 2016; and (3) Christian's "present, continuing, and chronic pain in both hip areas." The Stark Parties moved for summary judgment, arguing that (1) Christian's claims were time barred and (2) Christian failed to establish a prima facie case of medical negligence with competent expert testimony.

In response to the Stark Parties' motion, Christian submitted a declaration from Dr. Michael Roback, who opined that Dr. Stark's treatment of Christian did not conform to the applicable standard of care because Dr. Stark failed to perform the hip replacement surgery in a "careful and protected manner"; secure proper intraoperative x-rays to identify the femoral fracture; repair the femoral fracture during the initial surgery, "resulting in a leg length discrepancy"; "properly evaluate the initial signs of infection"; and "secure an infectious disease consultation at the time of the initial signs of infection."

The trial court granted the Stark Parties' motion and dismissed Christian's claims. In its order, the trial court stated that it had dismissed Christian's claims as time barred and, in the alternative, because Christian "lacked competent medical testimony to establish a claim for his alleged leg length discrepancy." Christian appeals.

---

[1] Christian's lawsuit also named Providence Regional Medical Center Everett, where Dr. Stark performed the May 2014 surgeries. But Providence was later dismissed by stipulation and is not implicated in this appeal.

ANALYSIS

Christian argues that because genuine issues of material fact exist as to when he discovered or reasonably should have discovered the elements of his claims against the Stark Parties, the trial court erred by dismissing those claims as time barred. We disagree.

We review summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and he fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows that there are no genuine issues of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions. Elcon Constr., Inc., 174 Wn.2d at 169. "The nonmoving party may not rely on speculation, argumentative assertions, 'or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.'" Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (quoting Seven Gables Corp. v. MGM/UA

Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

Here, it is undisputed that Christian's claims are governed by the limitations period set forth in RCW 4.16.350(3). That statute bars his claims unless they were commenced within the later of "three years of the act or omission alleged to have caused the injury or condition" and one year of the time Christian or his representative "discovered or reasonably should have discovered that the injury or condition was caused by said act or omission." RCW 4.16.350(3). It is also undisputed that Christian did not sue within three years of Dr. Stark's alleged acts or omissions. Therefore, the sole issue before us is whether Christian raised a genuine issue of material fact as to whether he sued within one year of the time that he or his representative "discovered or reasonably should have discovered that the injury or condition was caused by [Dr. Stark's] act or omission." RCW 4.16.350(3).

Under this one-year discovery rule, "a plaintiff's claim does not accrue until [ ]he discovers or reasonably should have discovered all the essential elements of a possible cause of action: duty, breach, causation, and damages." Olson v. Siverling, 52 Wn. App. 221, 227, 758 P.2d 991 (1988). The determination of when a plaintiff discovered, or through the exercise of due diligence should have discovered, the basis for a cause of action is generally a question of fact. Winbun v. Moore, 143 Wn.2d 206, 213, 18 P.3d 576 (2001). Nevertheless, "a question of fact may be determined as a matter of law where reasonable minds can reach only one conclusion." Cho v. City of Seattle, 185 Wn. App. 10, 15, 341 P.3d 309 (2014). "'The key consideration under the discovery rule is the factual,

as opposed to the legal, basis of the cause of action.'" Lo v. Honda Motor Co., 73 Wn. App. 448, 455, 869 P.2d 1114 (1994) (quoting Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 35, 864 P.2d 921 (1993)).

Here, as further discussed below, the undisputed record demonstrates that Christian discovered the factual basis of his claims against the Stark Parties before August 15, 2016 (i.e., one year before he filed this lawsuit). Therefore, Christian cannot avail himself of the one-year discovery rule, and summary judgment was proper.

First, with regard to the postsurgery infection, all of the facts underlying a claim based on the infection were known or reasonably should have been discovered by Christian no later than mid-May 2014. That is when Christian reported back to the emergency room shortly after his initial surgeries and physicians confirmed that he had an infection in the surgery incision area. Therefore, the trial court properly dismissed Christian's claims to the extent they were based on the postsurgery infection.

Next, with regard to the leg length discrepancy, Zaleck v. Everett Clinic, 60 Wn. App. 107, 802 P.2d 826 (1991), is instructive. In that case, the plaintiff, Steven Zaleck, was treated by Dr. Irving Varley of the Everett Clinic for a wrist injury in November 1981. Zaleck, 60 Wn. App. at 109. When Dr. Varley gave Zaleck an injection, Zaleck felt immediate pain in all five of his fingertips. Zaleck, 60 Wn. App. at 109. "The pain soon subsided, but Zaleck continued to feel numbness and tingling in his thumb." Zaleck, 60 Wn. App. at 109. When Zaleck asked Dr. Varley why the injection was so painful, "Dr. Varley explained that the

needle might have hit a nerve." Zaleck, 60 Wn. App. at 109. "According to Zaleck, Dr. Varley also said that the burning and numbness from the shot 'wouldn't be a problem and would go away.'" Zaleck, 60 Wn. App. at 109.

But the numbness and tingling in Zaleck's thumb did not go away, and Zaleck underwent multiple unsuccessful operations to correct his symptoms. Zaleck, 60 Wn. App. at 109. Zaleck consulted a lawyer in April 1985 and sued Dr. Varley and the Everett Clinic in March 1986. Zaleck, 60 Wn. App. at 110. After the trial court dismissed Zaleck's suit as untimely, Zaleck appealed, arguing that genuine issues of material fact remained as to when Zaleck should have discovered each of the elements of his claims, other than the duty element. Zaleck, 60 Wn. App. at 110-11.

We disagreed with Zaleck. Zaleck, 60 Wn. App. at 114. In doing so, we first addressed the causation element and observed that Zaleck's symptoms began when Dr. Varley administered the injection, and on that same day, Dr. Varley told Zaleck that he may have hit a nerve. Zaleck, 60 Wn. App. at 111. We explained, "From this a reasonable person could only have concluded that the injection caused at least some of Zaleck's symptoms." Zaleck, 60 Wn. App. at 111. We next addressed damages and observed that Zaleck had suffered numbness since the 1981 injection. Zaleck, 60 Wn. App. at 112. Therefore, "[a]lthough he may not have known at that time that he would ultimately suffer a permanent partial disability, he knew . . . that some damage had occurred." Zaleck, 60 Wn. App. at 112 (second alteration in original). We held that "[t]his is sufficient to establish that Zaleck discovered, or should have discovered, his

damage more than 1 year before he filed suit." Zaleck, 60 Wn. App. at 112. Finally, as to breach, we explained that "[t]o discover a 'breach' in a medical malpractice action, the plaintiff need not have known with certainty that the health care provider was negligent. Instead, the plaintiff need only have had, or should have had, information that the provider was possibly negligent." Zaleck, 60 Wn. App. at 112.

Here, the undisputed record reveals that like the plaintiff in Zaleck, Christian discovered or should have discovered, more than one year before he sued the Stark Parties, the basis of his claims related to his leg length discrepancy. First, as to damages, Dr. Stark's chart notes indicate that Christian felt, as early as summer 2014, that his left leg was shorter than his right. And according to Dr. Siggard's chart note, Christian reported that his right side had to "'bear the weight'" during his recovery from hip replacement surgery and that he "has had some right lower extremity symptoms." These included "pain in his right superior buttock and pains in his right Achilles tendon area" that have been present *since* the time of his May 2014 surgeries. In other words, even if Christian did not know that his left leg was shorter than his right leg until he saw Dr. Siggard in August 2016, he, like the plaintiff in Zaleck, knew that *some* damage had occurred well before he saw Dr. Siggard. Next, as to breach, Christian's claims are premised on the theory that Dr. Stark broke Christian's femur and then, because Dr. Stark failed to diagnose and repair the break during

the initial surgery, a leg length discrepancy resulted.[2] But Christian does not dispute that as of May 2014, he knew that Dr. Stark had broken his femur and that a second surgery was required to repair the break. In other words, as of May 2014, Christian "had . . . information that [Dr. Stark] was possibly negligent." Zaleck, 60 Wn. App. at 112. And as to causation, Christian reported to Dr. Siggard that the onset of his symptoms was the May 2014 procedures. As we reasoned in Zaleck, a reasonable person could only have concluded that the procedures performed by Dr. Stark in May 2014 caused Christian's symptoms. Finally, as in Zaleck, the duty element is not at issue here. Therefore, on this record, the trial court did not err by summarily dismissing Christian's claims.

Christian attempts to distinguish Zaleck by arguing that unlike the plaintiff in that case, Christian "did not have to go through multiple surgeries which would have given him notice of any damage, nor were there any complications." But Christian's argument that he did not have notice of any damage or complications is unconvincing where the undisputed record establishes that Christian experienced a broken femur, complained to Dr. Stark on two occasions that he felt like his right leg was longer than his left, and claimed to Dr. Siggard that "his right side had to 'bear the weight' during his recovery."

Christian also attempts to distinguish Zaleck by asserting that Dr. Stark represented to him that he "would be able to recover normally" and assured him

---

[2] This is the only theory supported by Dr. Roback's affidavit. Cf. Reyes v. Yakima Health Dist., 191 Wn.2d 79, 419 P.3d 819 (2018) (in medical malpractice cases, expert testimony is required to establish what a reasonable doctor would or would not have done, that the defendant failed to act in that manner, and that this failure caused the plaintiff's injuries).

"that there was no significant injury." But Christian provided no affidavit to the trial court to support any such representation or assurance, and Dr. Stark's chart notes, even when viewed in the light most favorable to Christian, reveal no such statement by Dr. Stark. See Lemond v. Dep't of Licensing, 143 Wn. App. 797, 807, 180 P.3d 829 (2008) ("This court will not consider allegations of fact without support in the record."). Christian's attempts to distinguish Zaleck fail.

Christian next contends that he did not begin to experience pain in his right leg until August 2016 and that even if he *had* experienced symptoms since May 2014, the symptoms "were considered minimal and part of his normal recovery until they became noticeable enough for him to see Dr. Siggard." Again, because Christian cites to no support in the record for these factual allegations, they do not merit consideration.

Christian also argues that he had "no suspicion of negligence" and "no confirmation of any injury" until he was examined by Dr. Siggard. But "[g]enerally, if the plaintiff is aware of some injury, the statute of limitation begins to run even if he does not know the full extent of his injuries." Steele v. Organon, Inc., 43 Wn. App. 230, 234, 716 P.2d 920 (1986). Here, Christian, who complained to Dr. Stark as early as summer 2014 that he felt his left leg was shorter than his right, was undisputedly aware of some injury at that time. Therefore, the fact that he did not obtain "confirmation" until he saw Dr. Siggard is unpersuasive.

Christian next points to an entry in Dr. Stark's November 2014 chart note stating that Christian's leg lengths were "equal" to suggest that a genuine issue

of material fact exists. But even if Christian's leg lengths became equal in November 2014 and became unequal again by the time he saw Dr. Siggard in August 2016, it remains undisputed that Christian had a leg length discrepancy in August 2014 that was significant enough for Dr. Stark to offer him a heel lift. In other words, Dr. Stark's November 2014 chart note does not change the fact that Christian knew of the basis for his claims as early as August 2014, and it does not require reversal. See Steele, 43 Wn. App. at 235 (rejecting patient's claim that she did not discover her claim for ergot overprescription until she had a heart attack in 1981 because, in 1975, she had been hospitalized for ergot poisoning).

Christian next argues that the Stark Parties failed to meet their initial burden under CR 56(c) to demonstrate the absence of any genuine issue of material fact. Specifically, he contends that "there was nothing in the [medical] records to indicate anything other than that Mr. Christian emerged from his operation without more than normal post-operative pain and was fully on the road to recovery." But the Stark Parties did meet their initial burden by pointing out below that by August 2014, Christian was aware of a leg length discrepancy and was even offered a heel lift to address it. And as discussed, the medical records submitted by the Stark Parties on summary judgment also establish that Christian claimed that his right side had to "'bear the weight'" during his recovery and that he experienced right-side pain since the time of his May 2014 surgeries. In short, contrary to Christian's assertions, the medical records indicate that Christian was experiencing something *other* than "normal post-operative pain" and that he was *not* fully on the road to recovery. Thus, the burden shifted to

Christian to set forth specific facts to disclose that a genuine issue of material fact exists. Becker, 165 Wn. App. at 245-46. But Christian, who did not even make a declaration in response to the Stark Parties' motion, did not do so. His argument fails.

Christian next relies on Winbun to argue that the question of when he discovered or should have discovered the basis of his claims should have been reserved for the jury. But in Winbun, the patient requested her medical records but was not given a complete set. Winbun, 143 Wn.2d at 216. In concluding that genuine issues of material fact precluded summary judgment, our Supreme Court observed, "It is arguable that the missing documents obscured [the patient]'s ability to determine the nature and extent of [the physician]'s care." Winbun, 143 Wn.2d at 217. Here, there is no evidence that missing medical records—or any other missing information—hampered Christian's ability to determine Dr. Stark's role in the May 2014 treatment. Therefore, Winbun is not persuasive.

Christian next argues that the fact that he experienced a traumatic medical event and knowledge of its immediate cause do not constitute notice that his injury was caused by a medical error or omission. He relies on Lo v. Honda Motor Company to support his argument, but his reliance is misplaced. In Lo, Elizabeth Lo's son, Brian, was born prematurely and with severe afflictions approximately one month after Lo was violently thrashed about in her Honda when it suddenly accelerated uncontrollably. Lo, 73 Wn. App. at 450-51. Lo repeatedly asked Brian's pediatricians about Brian's maladies. Lo, 73 Wn. App.

at 451. After they repeatedly told her that sometimes "'these things just happen,'" Lo became convinced that the Honda incident was the cause of Brian's maladies and she sued Honda. Lo, 73 Wn. App. at 451, 462. Eventually, however, when Brian was 3-1/2 years old, a doctor opined that medical negligence more probably than not caused or contributed to his maladies. Lo, 73 Wn. App. at 453. Within five months of receiving that opinion, Lo added Northwest Hospital Inc. where she delivered Brian, as a defendant in her lawsuit against Honda. Lo, 73 Wn. App. at 453-54.

In affirming the trial court's refusal to dismiss Lo's claims against the hospital as time barred, we recognized that the Honda incident presented another facially reasonable explanation for Brian's maladies and that Lo was repeatedly told that sometimes these things just happen. Lo, 73 Wn. App. at 460. But here, unlike in Lo, Christian has presented neither evidence of another incident that would have provided a facially reasonable explanation for his symptoms nor evidence that he was repeatedly assured that sometimes these things just happen. For these reasons, Lo is distinguishable and does not control.

As a final matter,[3] Christian argues that there is a typographical error in Dr. Stark's August 13, 2014, note stating that "[w]hen standing the left iliac crest appears to be 45 mm shorter than the right iliac crest." Specifically, Christian alleges that Dr. Stark told him that the discrepancy was only "'about 1/2

---

[3] Christian also relies on Rispoli v. United States, 576 F. Supp. 1398 (E.D.N.Y. 1983), aff'd, 779 F.2d 35 (2d Cir. 1985), to argue that summary judgment was improper. But Rispoli is not binding, and we decline to consider it.

14

centimeter'" and asserts that this inconsistency raises a genuine issue of material fact. But there is no support in the record for Christian's allegation that Dr. Stark told Christian the discrepancy was only about 1/2 centimeter in size. Therefore, Christian's assertion that "some kind of mistake was made in reporting the discrepancy on August 13, 2014," amounts to speculation, which is not enough to defeat summary judgment. Becker, 165 Wn. App. at 245-46. Furthermore, because Christian reported experiencing pain since May 2014 but failed to sue until August 2017, neither the fact of the discrepancy nor its actual size is material.

In short, the trial court did not err by dismissing Christian's claims as time barred. And because dismissal on that basis was proper, we do not reach the trial court's alternate basis for dismissal, i.e., that Christian failed to establish a prima facie case of medical negligence supported by competent medical testimony.

We affirm.

WE CONCUR: