IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GEORGE CANTU, )
)
Appellant, )
)
v. )
)
NIKOLAY A. USOLTSEV, MD, JANE )
DOE USOLTSEV, HUSBAND AND WIFE )
AND THEIR MARITAL COMMUNITY, )
BLUE WAVE ANESTHESIA INC., A )
WASHINGTON STATE CORP., FRANK )
SCHRAMM MD ET UX AND )
COMMUNITY, JAMES K. BREVIG, MD )
ET UX AND COMMUNITY, PEYTON G. )
LANE, RN ET UX AND COMMUNITY, )
RAE A. HENRY ET UX AND )
COMMUNITY, )
)
Respondents. )
)

No.   80724-2-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, J. — George Cantu, acting pro se, appeals the summary judgment dismissal of his medical malpractice action.  We conclude that summary judgment was proper because Cantu's claims were barred by the applicable statute of limitations.  We further conclude that the trial court did not err in imposing nominal sanctions on Cantu for filing a frivolous motion.  We affirm.

FACTS

On March 6, 2015, George Cantu underwent a coronary artery bypass graft surgery performed by Dr. James Brevig at Providence Regional Medical Center in

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

Everett. Dr. Nikolay Usoltsev was the primary anesthesiologist for the procedure. After Usoltsev administered preoperative medications, Cantu suffered respiratory arrest in the preoperative holding area. He was initially unresponsive, but recovered. Brevig's notes indicated that the incident "[s]eems likely related to medication administration." Brevig advised Cantu's family of the incident, and a decision was made to proceed with the operation. Brevig, Usoltsev, and Dr. Frank Schramm met with Cantu's family and discussed the potential causes of the event, including the possibility of a medication error.

On March 2, 2018, Cantu filed a pro se medical malpractice claim against Providence and his cardiologist, Dr. Sanjeev Vaderah. The defendants moved for summary judgment dismissal of Cantu's claims, arguing that Cantu failed to identify any expert support for his claims. On May 21, 2019, Cantu obtained the clerk's signature on a subpoena for Usoltsev to attend a deposition on May 31, 2019. This was past the date for Cantu to file his responsive pleadings in opposition to the defendants' motions for summary judgment. Cantu did not prepare a notice of deposition, did not personally serve the subpoena on Usoltsev, and did not tender a witness fee. Counsel for Usoltsev informed Cantu that his client was unavailable on that date and would not be attending the improperly noted deposition. On June 6, 2019, the trial court granted summary judgment. Cantu moved for reconsideration, arguing that the dismissal should be reversed and that he should be allowed to file an amended complaint to include Usoltsev as a defendant. The trial court denied Cantu's motion, and this court affirmed on appeal. Cantu v. Providence Hosp., No. 80229-1-I (Wash. Ct. App. Aug. 10, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/802291orderandopin.pdf.

On June 6, 2019, the same day the trial court dismissed the 2018 action, Cantu filed a new summons and complaint against Usoltsev and his practice group, Blue Wave Anesthesia. The complaint alleged the same conduct set out in the 2018 action and stated that Cantu would request CR 11 sanctions in the event that the defendants denied liability regarding "the clear and undisputed facts in this matter regarding the happening of this occurrence." The defendants filed a CR 12(b) motion to dismiss for failing to file the summons and complaint within the statute of limitations. They also sought a protective order preventing discovery until after the motion to dismiss was resolved.

At a hearing on August 16, 2019, the trial court denied the defendants' CR 12(b) motion to dismiss and ruled that the matter should be renoted as a CR 56(c) motion for summary judgment. The court also granted the defendants' motion for a protective order pending disposition of the summary judgment motion, except for facts relevant to the statute of limitations. On the same date, Cantu filed an amended complaint additionally naming Brevig, Schramm, and members of the nursing staff who provided care to Cantu before and after the procedure (Respondents).

On July 3, 2019, Cantu bypassed counsel and filed interrogatories and requests for production spanning a broad range of topics directly on Usoltsev. Counsel for Usoltsev objected on the ground that discovery was inappropriate until the statute of limitations issue was resolved. On August 5, 2019, Cantu filed multiple discovery motions to be heard on August 13, 2019. The commissioner struck the motion pending the August 16, 2019 hearing on the motion to dismiss. Later that same day, Cantu filed a second motion to compel discovery in which he asserted that all of his interrogatories and requests for production were relevant to the statute of limitations "because they are written towards

getting information about what the doctors did to me specifically regarding anesthesia." Cantu attached the declaration of his expert, Dr. Richard Novak, who opined that the defendants' record keeping fell below the standard of care because it was "very lacking in specifics" as to what caused the respiratory arrest. In opposing the motion, the defendants argued that there had been no CR 26(i) conference regarding which questions related to the statute of limitations and that they had already answered the questions that they believed were relevant to that topic.

On August 23, 2019, the court granted Cantu's motion to compel in part by requiring the defendants to answer two of the 36 interrogatories. The court denied Cantu's request for sanctions and warned him that "sanctions may be considered if motions are filed regarding issues already ruled upon." Cantu then filed a motion for reconsideration in part in which he challenged the trial court's ruling limiting discovery and a motion for revision of the commissioner's ruling striking the hearing on his discovery motions pending the defendants' motion to dismiss. In response, the defendants voluntarily supplemented their response to Cantu's discovery requests.

On September 3, 2019, the defendants filed a motion for summary judgment arguing that the statute of limitations barred Cantu's claim because he had knowledge of all of the elements of his cause of action when he filed his 2018 lawsuit. Cantu sought a continuance of the hearing on the motion for summary judgment and identified specific questions that he needed at a minimum to respond to the motion for summary judgment. On October 4, 2019, after denying Cantu's motion to continue the hearing, the court granted the defendants' motion for summary judgment, ruling that all of the information Cantu needed to file his cause of action was available to him within the statute of

limitations. Cantu immediately stated that he would appeal, and the court warned him that he would need to strictly follow court rules regarding timelines if he wished to appeal the order.

Eleven days after entry of the summary judgment order, Cantu filed a motion for reconsideration. The defendants responded that Cantu's motion was untimely and without merit. Cantu then filed a notice of appeal in this court and a "motion for relief from orders" at the trial court pursuant to CR 60(b)(3), (b)(4) and (b)(11). In the motion, Cantu asserted that counsel for Usoltsev made false statements and misled the court about the dates he filed documents. On December 6, 2019, the court denied Cantu's motion for relief from orders. The court further ruled that the pleading contained factual misrepresentations and that it was frivolous and filed in bad faith. Accordingly, the court imposed nominal sanctions of $10 to be paid to each defendant for a total of $50. Cantu appealed.[1]

ANALYSIS

I.    Summary Judgment Dismissal and Statute of Limitations

Cantu contends that the trial court erred in granting summary judgment dismissal of his medical malpractice claim based on the statute of limitations. We disagree.

We review an order on summary judgment de novo, performing the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We

---

[1] As a preliminary matter, Respondents ask this court to summarily dismiss Cantu's appeal as untimely pursuant to RAP 18.8(b). Cantu filed his notice of appeal 41 days after the trial court's summary judgment dismissal of his claim. Cantu argues that his motion for reconsideration tolled the 30 day period for seeking review. He acknowledges that his motion for reconsideration was filed one day late, but argues that this court should overlook the late filing because he did not have internet access on the filing deadline date. Even if Cantu's appeal were timely, he would not prevail on the merits.

5

consider the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Reid v. Pierce County, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000); CR 56(c). "A motion for summary judgment based on a statute of limitations should be granted only if the record demonstrates that there is no genuine issue of material fact as to when the statutory period commenced." Zaleck v. Everett Clinic, 60 Wn. App. 107, 110, 802 P.2d 826 (1991). Once the moving party has submitted adequate affidavits to support summary judgment, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and that reveal a material issue of fact. Dombrovsky v. Farmers Ins. Co. of Wash., 84 Wn. App. 245, 253, 928 P.2d 1127 (1996). The nonmoving party may not rely on speculation, argumentative assertions, or unsupported affidavits. Id.

The statute of limitations for medical negligence claims is either three years, or one year after discovery of the negligence, whichever is later. RCW 4.16.350(3).[2] The one-year "post-discovery period" begins to run "when the plaintiff 'discovered or reasonably should have discovered all of the essential elements of [his or] her possible cause of action, i.e., duty, breach, causation, damages.'" Zaleck, 60 Wn. App. 107, 110-11, 802 P.2d 826 (1991) (quoting Ohler v. Tacoma Gen. Hosp., 92 Wn.2d 507, 511, 598 P.2d

---

[2] RCW 4.16.350(3) provides that an action for damages for injury occurring as a result of health care based upon alleged professional negligence,

> [S]hall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his or her representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later.

1358 (1979). "To discover a 'breach' in a medical malpractice action, the plaintiff need not have known with certainty that the health care provider was negligent. Instead, the plaintiff need only have had, or should have had, information that the provider was possibly negligent." Id. at 112. "The key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action." Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 35, 864 P.2d 921 (1993).

Here, Cantu's medical records clearly document a possible medication error. Moreover, Cantu's declaration filed in the 2018 case demonstrated that he was aware of the basis of the claim when he stated:

> [W]hile waiting at per-op a code Blue was call where I stop breathing and they resuscitate me from a premature death, I'd stop breathing for over 11 minutes, I survive the code blue shortly after a specialist in Anesthesiology came to my room Mr. Nikolay A. Usoltsev M.D. when I ask him what happen he admitted to me he had given me the wrong Medication and crying said he was sorry.

Cantu claims that he did not know the name of the anesthesiologist who treated him and therefore could not bring suit against him. However, Cantu's medical records clearly document the names of the medical professionals involved in his care, including Usoltsev. Cantu, as the patient, had the right to obtain these medical records directly from the provider. RCW 70.02.030. Cantu asserts that his "mental injury affected his [diligence]" regarding failure to obtain these records in a timely manner. No evidence in the record corroborates Cantu's claim.[3]

Cantu also asserts that the statute of limitations should not bar his claim because he was not aware of causation until he was informed in 2018 that the worsening of his

---

[3] Cantu also appears to argue that the trial court erred in the 2018 case by denying his motion to amend his complaint to add Usoltsev as a defendant. This court rejected the same claim in Cantu's appeal of the 2018 action.

7

PTSD may have been related to the event. However, the consulting psychiatrist who examined Cantu shortly after the surgery documented that Cantu "remembers distinctly being awake and not being able to breathe" and that Cantu "is oriented but admitted he was having difficulty keeping his mind focused and maintaining a train of thought." Because Cantu was aware of some harm, he was required to file the lawsuit within three years. "'[W]hen a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered.'" 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 581, 146 P.3d 423 (2006) (quoting Green v. A.P.C. (Am. Pharm. Co.), 136 Wn.2d 87, 96, 960 P.2d 912 (1998).

Cantu next asserts that the statute of limitations was tolled based on fraud, misrepresentation, or concealment by Usoltsev. This claim lacks merit. RCW 4.16.350(3) provides that the statute of limitations for medical negligence is tolled by proof of intentional concealment:

> [T]he time for commencement of an action is tolled upon proof of . . . intentional concealment . . . until the date the patient or the patient's representative has actual knowledge of the . . . concealment, . . . the patient or the patient's representative has one year from the date of the actual knowledge in which to commence a civil action for damages.

Summary judgment is appropriate where the plaintiff fails to allege facts implicating this statutory provision. Gunnier v. Yakima Heart Ctr., 134 Wn.2d 854, 867, 953 P.2d 1162 (1998). Cantu asserts that the statute of limitations was tolled on this basis because Usoltsev refused to answer all of his discovery requests. But Usoltsev answered all of

the discovery questions that the court deemed relevant to the statute of limitations.[4] Cantu also asserts that Novak's declaration supports Cantu's argument that the medical records "purposefully undocumented" the medication error. But Novak opined only that the medical records were lacking in specifics, not that they constituted fraud or prevented Cantu from understanding that he had a claim.

Cantu's reliance on Winbun v. Moore, 143 Wn.2d 206, 18 P.3d 576 (2001) is misplaced. In Winbun, the hospital failed to provide the plaintiff's complete medical record until after she sued, thus depriving her of information about a possible malpractice defendant. Id. at 211-12. The Washington Supreme Court held that substantial evidence supported the jury's determination that the plaintiff did not discover, nor with due diligence reasonably should have discovered, the factual basis of the cause of action. Id. at 217. But in Winbun, the plaintiff made a written request for the medical records relating to her treatment. Id. at 216. Here, in contrast, Cantu never exercised his statutory right to request his medical records.

Next, Cantu claims that the statute of limitations should be tolled by his disability. RCW 4.16.190(1) provides that the statute of limitations is tolled for an individual who is "incompetent or disabled to such a degree that he or she cannot understand the nature of the proceedings, such incompetency or disability as determined according to chapter 11.88 RCW." Under RCW 11.88.010(a), "a person may be deemed incapacitated as to

---

[4] Cantu also argues that the trial court erred in limiting the scope of discovery to the issue of the statute of limitations. A trial court has broad discretion under CR 26 to manage the discovery process and, if necessary, to limit the scope of discovery. CR 26(b), (c); Rhinehart v. Seattle Times Co., 98 Wn.2d 226, 232, 654 P.2d 673 (1982). We review a trial court's decision to limit discovery for an abuse of discretion. Lang v. Dep't of Health, 138 Wn. App. 235, 254, 156 P.3d 919 (2007). Here, because Usoltsev moved to dismiss on the three-year limitations period, any discovery beyond that issue prior to the court's ruling on that issue would have been futile. The court did not abuse its discretion in limiting discovery.

person when the superior court determines the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety." Under RCW 11.88.010(b), "a person may be deemed incapacitated as to the person's estate when the superior court determines the individual is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs." Cantu asserts that his diagnosis of PTSD and depression qualify him for this tolling provision. But nothing in the record supports a finding that Cantu met these definitions. Moreover, Cantu's active participation in this litigation as a pro se plaintiff indicates that he had the ability to pursue his claims. The three-year statute of limitations bars Cantu's claim.[5]

Cantu also argues that the trial court abused its discretion by denying his motion for a continuance to allow him to pursue further discovery. "A trial court may continue a summary judgment hearing if the nonmoving party shows a need for additional time to obtain additional affidavits, take depositions, or conduct discovery." Bldg. Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 742, 218 P.3d 196 (2009) (citing CR 56(f)). "The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence; (2) the requesting party does not indicate what evidence would be established by further discovery; or (3) the new evidence would not raise a genuine issue of fact." Butler v. Joy, 116 Wn. App. 291, 299, 65 P.3d 671 (2003). Here, when the court asked Cantu what evidence he believed he would discover if the court granted a continuance, he responded "Unknown factors."

---

[5] Because the three-year statute of limitations bars Cantu's lawsuit, we need not reach the issue of whether a genuine issue of material fact exists as to when he discovered the basis for the claim for purposes of the one-year discovery rule. Nor do we need to reach Cantu's claim that the medical malpractice discovery rule is unconstitutional.

Because Cantu was unable to specify, or even speculate, what additional evidence he believed he could obtain by a continuance, the court properly denied it.

II.      Imposition of Sanctions

Cantu argues that the trial court erred in imposing $50 in sanctions without entry of written findings of specific conduct.  Cantu is incorrect.  "[I]n imposing CR 11 sanctions, it is incumbent upon the court to specify the sanctionable conduct in its order."  Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994).  Here, the trial court's written order identified the specific pleading that violated CR 11 and the reason for the violation:

> Plaintiff's Motion for Relief from Orders of 10/4/19 and 10/11/19 is DENIED. The Court has considered the Defendants' request for sanctions based on the number of motions being filed by Mr. Cantu and the nature of the present motion. The Court finds that the Motion for Relief from Orders does contain factual misrepresentations in violation of CR 11. The present motion is frivolous and filed in bad faith. The Court hereby imposes sanctions in the amount of $50.

In addition to the written findings, the court stated at the hearing that Cantu's pleadings "made very clear misstatements of fact as to what occurred," "deliberately misinterpret statements made by counsel in pleadings," and "make statements that contradict with other statements" made in other pleadings, and "accuse others of fraud."  The court did not err in entering this sanction.

Respondents also ask this court to impose sanctions against Cantu pursuant to RAP 18.9(a) for filing a frivolous appeal.  RAP 18.9(a) authorizes us, on our own initiative or on a motion of a party, to order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court."  "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing

party." Yurtis v. Phipps, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)). When deciding if an appeal is frivolous, we resolve all doubts in favor of the appellant. Id. at 906. Cantu advanced no plausible argument for reversal of the trial court. His appeal was frivolous, however we find no remedial benefit in the imposition of additional nominal sanctions on appeal. As such, we affirm the sanctions imposed by the trial court and decline respondents' invitation to further sanction Cantu here.

Affirmed.

WE CONCUR:

12